### FRANK KELLEY v. THE STATE.

#### No. 4162.   Decided November 1, 1916.

**1.—Assault to Murder—Arrest—Officers—Notice to Defendant.**

Where, upon trial of assault to murder, the evidence showed that three officers, in citizens clothes, went to the defendant's room at night, for the purpose of arresting him for committing robbery shortly before, knocked on defendant's door, who asked, "Is that you, Dave?" when the officers replied, "Yes," when defendant opened the door and the shooting began, etc.; the evidence further showing that defendant was aware that the parties entering the room were officers to effect his arrest, he was not justified in shooting the officers although they had not notified him of their purpose.  Davidson, Judge, dissenting.

**2.—Same—Illegal Arrest—Charge of Court—Self-defense—Force Used.**

Where, upon trial of assault to murder, the defendant complained of the court's failure to give in charge to the jury articles 289 and 290, Code Criminal Procedure, relating to an officer forcibly entering a house to make an arrest, and that the officer shall make it known that he is an officer and that he is there for making an arrest, and the evidence showed that the officers were trying to overtake the defendant who had shortly before committed two robberies and escaped, and forcibly entered defendant's room who thereupon shot and wounded one of the officers, the evidence further showing that defendant was aware of the fact that they were officers and had come to arrest him, and the court submitted in his charge the theory of the State that the defendant was not justified under these circumstances, and also instructed the jury what would be an illegal arrest, and defendant's right of self-defense, force used, etc., there was no reversible error.  Davidson, Judge, dissenting.

Appeal from the Criminal District Court of Dallas.   Tried below before the Hon. W. L. Crawford, Jr.

Appeal from a conviction of assault with intent to murder; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*W. F. Bane* and *El J. Gibson,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of arrest by officers:   Lynch v. State, 41 Texas Crim. Rep., 510; Cortez v. State, 43 id., 375; Smith v. State, 48 id., 233; Stewart v. State, 76 Texas Crim. Rep., 442.

HARPER, JUDGE.—Appellant was convicted of assault to murder and his punishment assessed at seven years confinement in the State penitentiary.

There are four bills of exception, three to the refusal of the court to give special charges requested; the fourth embodying appellant's exceptions to the charge as given.   We do not deem it necessary to discuss each of them separately, but rather all four at one time, because they each present the same question, in substance, and that is, the failure of the court to give in charge articles 289 and 290 of the Code of Criminal Procedure, which relate to an officer forcibly entering a house to make an arrest, and in making an arrest, both articles pro-

viding that the officer shall make it known that he is an officer, and that he is there for the purpose of making an arrest. Three officers, in citizens' clothes, went to appellant's room at night for the purpose of arresting him; they knocked on his door and he asked, "Is that you, Dave?" The officer replied; "Yes." Dave was a friend of appellant, whom he was expecting to come to his room, and when appellant opened the door he saw the three officers, one of them having a pistol drawn. He undertook to close the door and the shooting began, appellant shooting two of the officers, and this conviction is for the act of shooting one of these officers.

Appellant's contention is, that as these officers testified they did not inform appellant they were officers and there to effect his arrest, he was justified in shooting, and the court should have instructed the jury that it was the duty of the officers to notify appellant that they were officers and had come to arrest him, and as they admit they did not do so, the court should have, in effect, instructed the jury appellant was justifiable in resisting and in shooting the men at his door. This is the contention made by appellant in the special charges requested, and in the exception to the charge.

The court tried the case upon the theory that although these officers did not notify appellant of their purpose, yet if the jury found (notwithstanding these officers failed to so tell appellant) that appellant was aware they were officers and had come to effect his arrest, appellant would not be justified in shooting the officer, and we think this a correct exposition of the law.

It is true appellant testified he did not know the men, and he thought they had come to his room to effect a burglary, or for some other unlawful purpose; that they did not notify him they were officers, nor the purpose of their mission, and when they undertook to force an entrance to his room he shot to protect himself and his domicile. If the jury found that state of facts to be true, he should have been acquitted, and this we do not think anyone would question.

But the State contends, that although the three men who went to the door and knocked did not explain their purpose to appellant, yet the facts and circumstances in the case are such as to authorize the jury to find that he did know they were officers and they were there to arrest him. And as raising this issue, the State proved, and appellant admitted, that he that night had committed two acts of highway robbery; that the officers went to the door and knocked, and men on an unlawful mission do not generally give notice of their presence on occasions of this character; that appellant, while testifying that he did not know they were officers there to effect his arrest, yet stated after he closed the door he went to the window for the purpose of escaping through the window, and that one defending his residence would not be hunting places to escape; that when he got his head out of the window an officer stationed there fired at him and grazed the back of his head; that he then exclaimed, "I will surrender," or "I will

give up," and we think these facts and circumstances are such as to authorize the court to submit to the jury the issue of whether or not appellant knew they were officers, intending to arrest him, when he shot officer Smith. It is true, appellant in his testimony, would explain these circumstances, yet the court and jury were not compelled to accept his explanation.

Appellant is on trial, and not officer Smith. Mr. Smith and those with him may not have done their whole duty under the law. Under the law it may be contended that when they knocked on the door and appellant asked, "Is that you, Dave?" they should have answered, "No, we are officers here to arrest you for the robbery of the Caywoods and the robbery at the drug store," but the desperate methods used in the perpetration of these two robberies made the officers aware they would be taking their lives into their hands to have so answered. But their failure to do so would not authorize appellant to shoot them, or either of them, if he was in any way made aware of the fact they were officers and were there to arrest him. It is appellant who is on trial, and it is the information he had and the motive moving him to fire the shots by which he is to be judged, and not the motives of the officers. That the officers did not specifically notify him of their mission would be a circumstance tending to show he had no notice they were officers, and the court admitted the testimony on that theory; yet this is not conclusive proof that he was not aware of their purpose and mission. If he was aware of their purpose in coming to his room—that is, to effect his arrest, he would not be authorized to slay them, no matter how negligent in the performance of their duty they might have been.

The court instructed the jury, after defining properly what would be an illegal arrest: "In this connection you are charged that though you find and believe from the evidence that the defendant was guilty of a felony yet if he was not at the time about to escape and there was time for the officers to procure a warrant for his arrest, then you are instructed that said arrest of defendant without a warrant (if they did so arrest him) was illegal and that defendant had a right to resist same, using such force as was necessary, going even to the extent of killing said Smith and Eimecke or either of them, if such killing was necessary to prevent said illegal arrest and if you find and believe under this charge that said arrest was illegal as herein defined and that the injury inflicted upon the said Frank Smith, if any, was made while resisting arrest, or if you have a reasonable doubt thereof then you will acquit the defendant and say by your verdict not guilty."

Again, on the question of using more force than was necessary in effecting the arrest, the court instructed the jury: "You are hereby instructed at the request of the defendant that though you may find and believe from the evidence that the officers, Smith, Eimecke and Lane, had information from a credible person that the defendant herein had committed a felony and though you believe said officers had a lawful right at said time to arrest the defendant, yet if you find and

believe from the evidence that the power to arrest was, by them, or either of them, exercised in such a wanton and menacing manner as to threaten the defendant with loss of life or some serious bodily harm, then you are instructed said defendant had the right to defend himself from such danger or apparent danger as it reasonably appeared to him viewed from his standpoint. And a party so unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant. If you believe that the defendant committed the assault as a means of defense against the power to arrest exercised in a wanton and menacing manner, believing at the time he did so (if he did do so) that he was in danger of losing his life or of serious bodily injury at the hands of the said Lane, Smith and Eimecke, or either of them, or if you have a reasonable doubt thereof, then you will acquit the defendant and say by your verdict not guilty."

In his main charge the court instructed the jury:

'You are therefore instructed that if you believe from the evidence or have a reasonable doubt thereof that the said Frank Smith, or one George Eimecke or one E. B. Lane or either or all of them just previous to the time of the assault, if any, alleged in the indictment, attempted to force an entrance into the room occupied by the defendant; and if you further believe from the evidence or have a reasonable doubt thereof, that at the time of attempting to force such entrance, if they did attempt to force an entrance, the said Frank Smith or said George Eimecke or said E. B. Lane, or either or all of them, had a pistol or pistols in their hands; and you further believe from the evidence or have a reasonable doubt thereof, that the defendant saw said pistol or pistols, and that viewed from the defendant's standpoint and viewed in the light of all the surroundings, facts and circumstances, that the defendant reasonably believed that he was about to be unlawfully attacked and was about to receive death or serious bodily injury at the hands of the said Frank Smith or said George Eimecke or the said E. B. Lane, or either or all of said men, or that the defendant reasonably believed that said Smith, Lane and Eimecke, or either or all of them, were attempting to enter said room for the purpose of burglary or the commission of a felony or were attempting to force an unlawful intrusion into the room of defendant, or were attempting to make an unlawful or illegal arrest of the defendant and that he, the defendant, acting under a reasonable apprehension of such danger, unlawful intrusion or unlawful arrest, if any, at the time he did shoot said Frank Smith, if the defendant so shot him, that then if you so find, or have a reasonable doubt thereof, you are charged that such assault, if any, committed by the defendant upon the said Frank Smith, if he did so commit it, would be justifiable upon the grounds of his own necessary self-defense or in defense of his personal property or in defense of his domicile, and if you so believe or have a reasonable doubt concerning such fact, you will acquit the defendant and say by your verdict not guilty.

"You are further charged that if you find and believe from the evidence, or have a reasonable doubt thereof, that at the time the officers Smith, Lane and Eimecke effected the arrest of the defendant at the rooming house on the corner of Elm and Hawkins Streets in the City of Dallas, Texas, that the defendant did not know and did not have reasonable ground to believe that said Smith, Lane and Eimecke were officers attempting to effect the arrest of the defendant at said time and place; and you further find and believe from the evidence, or have a reasonable doubt thereof, that the acts and conduct of said Smith, Lane and Eimecke, or their acts, coupled with their words, at said time and place reasonably created in the mind of the defendant a belief that the said Smith, Lane or Eimecke were burglars or robbers attempting to force an entrance to his room for the purpose of committing the offense of theft or any other felony or that such acts or words, or acts coupled with the words of the said Smith, Lane and Eimecke, or either or all of them, if any, created in the mind of the defendant a reasonable belief that he was about to receive an unlawful attack from the said Smith, Lane or Eimecke, which placed the defendant in danger of death or serious bodily injury, then if you so find you are instructed that the defendant had the right to use all necessary force to repel such intrusion into his room by said Smith, Lane and Eimecke, or either or all of them—even going to the extent of taking the life of either or all of said men; and it matters not whether such danger be real or apparent, if it reasonably appeared to the defendant that such danger did in fact exist.

"If you believe that the defendant committed an assault as charged, if any, as a means of defense, believing at the time he did so (if he did so) that he was in danger of being robbed or of losing his life or of serious bodily injury at the hands of said Smith, Lane and Eimecke, or either of them, or if you have a reasonable doubt thereof, then you will acquit the defendant, and say by your verdict not guilty. . . .

"You are further charged that it matters not whether such danger, if any, did in fact exist; but it is only necessary that the defendant reasonably believed that such danger did in fact exist, and if acting upon such reasonable belief the defendant would be justifiable in using all necessary force to protect himself against such danger—whether the danger was either real or apparent.

"You are further charged that if you find and believe from the evidence or have a reasonable doubt thereof, that the arrest of the defendant by said officers Smith, Lane and Eimecke was an illegal arrest or if you further find and believe from the evidence that viewed from the standpoint of the defendant in the light of all the surroundings and circumstances of the case, that the defendant reasonably believed such arrest was an unlawful or an illegal arrest, or if you find that the defendant reasonably believed that said Lane, Eimecke and Smith were about to make an unlawful intrusion into defendant's room, then if you so believe or have a reasonable doubt thereof you are instructed that the

defendant had the right to use all necessary force in overcoming such, either real or apparent illegal arrest or unlawful intrusion, if any, or such arrest as the defendant reasonably believed to be unlawful or illegal.

"You are further charged that in passing upon the defendant's case the jury should view all of the facts from the defendant's standpoint—each juror should place himself as nearly as may be in the position of the defendant at the time of the assault, if any, and determine from all of the facts and circumstances and surroundings as they appeared to defendant at the time of the assault, if any, whether an apprehension or a fear of death or serious bodily harm was reasonable; and if you so find you should acquit the defendant and say by your verdict not guilty."

Having thus instructed the jury, we do not think they could possibly have been misled as to appellant's right to defend his person and an intrusion into his room, if he did not know they were officers and their mission was to arrest him for the robberies committed by him that night.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—I can not concur in this affirmance.

DAVIDSON, JUDGE (dissenting).—I disagreed with my brethren on the affirmance. They held the charge was sufficient, and the case correctly tried. The evidence demonstrates that appellant after midnight in the "wee small hours of the morning" was at his hotel in his room retired for the night; that he was aroused by someone at his door. He asked if that was his friend and companion calling his name. He was informed that the caller was the friend mentioned. He opened the door to admit him and was confronted by three strangers in citizens' or "plain clothes," who testified on the trial they were officers in "plain clothes." They were entire strangers to him. They had no warrant for the arrest of appellant. They went to his room at that late hour of the night on information they had received of his whereabouts. It seems that some time early the same night appellant and his friend had committed robbery in Oak Cliff, and officers were seeking his arrest. One of the "plain clothes" officers undertook to enter; they were armed and the shooting began. One of the officers was wounded. I can not agree with my brethren that appellant knew that these parties were officers and he was trying to make his escape. They had no warrant for his arrest and misled him by making the statement that the speaker was his friend. This was not true and admitted by the witnesses in testifying to be untrue. They were all strangers to appellant. They knocked at his door long after midnight, with nothing to indicate to him their official rank or why they were there. They did not notify him at any time of their official rank or their purpose, but misled him by the speaker telling him that he was his looked for friend. The

majority seem to place this upon the theory that the officers were authorized to pursue and arrest appellant without a warrant or to notify him of the fact that they were officers at his room at that time of the night. This is not the law in Texas. There is nothing to indicate that he was escaping or trying to escape. He was in bed locked in his room for the night with no purpose indicated in this record of getting out of that room or bed. He had left the place of the alleged robbery in Oak Cliff and had come to Dallas, and retired for the night. This was not indicative of flight or seeking to escape. If appellant knew they were officers we might have a different proposition, but there is nothing to indicate that he so knew. In fact, the evidence demonstrates the contrary. Not only so, but until he opened the door he believed otherwise. There was nothing to indicate to him the purpose of the visit of three men and they did not disclose their purpose. So far as he is concerned they may have come to him as robbers or people intending to do him violence, and he could readily have so believed. The last and most remote conjecture that would come to his mind was that they were officers. They had ample opportunity to so inform him but not only did not but misled him by stating what was not true. It is but a natural conclusion, first, that the spokesman was his friend; second, that he was intentionally misled; third, that he was not hailed by officers as such; fourth, that strangers coming to his room at an unseemly late hour were bent on purposes unknown but suspicious to appellant; fifth, those strangers had as much time to inform appellant why they were there and their mission and who they were as they did to mislead and falsify as to who they were and why they were there; sixth, it is evident he was misled and did not know who they were, but believed the speaker to be his friend; seventh, these officers could have as readily and easily told him the truth as to who they were and their mission as they did to mislead him; it would have taken no more time and brought less trouble; eighth, the statute requires officers to notify appellant of their presence and official character and purpose; ninth, the law did not and does not authorize officers to misinform and mislead, but it does require them to give notice of their reasons for calling at night under such circumstances as indicated in this record. That there may be no mistake about it I quote article 289, Vernon's Criminal Procedure, page 843: "In case of felony, the officer may break down the door of any house for the purpose of effecting an arrest, if he be refused admittance, after giving notice of his authority and purpose." Apropos of this, they did not notify appellant of their mission for arrest; he did not refuse them admittance, thinking they were his friends; nor did the officers give notice of their authority or purpose; but, on the contrary, told him they were somebody else. Article 290 may also be cited here: "In executing a warrant of arrest, it shall always be made known to the person accused under what authority the arrest is made; and, if requested, the warrant shall be exhibited to him." There was no warrant in the hands of the officers in this

instance, and, of course, none exhibited, and not only that but appellant was not aware of the fact they were officers, because they misled him as to their identity and purpose. While the court charged in a general way that if appellant knew they were officers, he had no right to resist. The State's contention was, after the shooting was over he ran to a window to get out and get away and that he discovered some officers on the outside dressed in official clothes, and dating back from that discovery they charged him with notice of the fact he knew who the three men at the door were. This is rather a violent presumption against the facts and against the law and against the innocence of the accused. The accused is to be tried from his standpoint of view. There was nothing to indicate the officers could not obtain a warrant before his escape, because the man was in bed, and was not trying to escape; but the court charged that if the defendant was not aware, or if there was a reasonable doubt of the fact that he was not aware they were officers, he would not be guilty of resisting arrest. This was a direct thrust at his right of defending himself from his bedroom at night against unknown trespassers or men he believed to be trespassers, and in charging the law it must be favorably given to defendant as he viewed it. If appellant was not aware that these officers come to arrest him, or there was a doubt about it, he had the right to resist. These officers could have informed him of their mission but did not. They had ample time to do so, and this is demonstrated by the fact that they called twice to appellant before he answered, and when he did answer they misled him as to who they were, and obtained entrance to his door under the theory that he was admitting his friend and associate. It would hardly justify discussion to arrive at the conclusion that the officers had as much time to notify him they were officers and wanted to arrest him, and, therefore, ask admittance, as they did to mislead him as to who they were. I do not care to pursue this matter further.

There are other matters in the record, but I do not understand how this defendant has had a fair trial under this record and under the statutory laws of this State. I can not, therefore, agree to the affirmance. I do not believe the decision correct. I respectfully enter my dissent.